UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES M. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-00373-JPH-DLP |
| | ) |
| VINCENNES UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

James Jones alleges that he was removed from his position as Chief of Police at Vincennes University ("VU") because of his Japanese race and national origin. VU moved for summary judgment. Mr. Jones has not designated evidence from which a jury could find that his race or national origin was the reason he was removed as Chief of Police so the Court **GRANTS** VU's motion. Dkt. [47].

**I.
Facts and Background**

Because VU has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Jones is a United States citizen of Japanese descent. Dkt. 47-2 at 9 (Jones. Dep. at 31:19-21); dkt. 47-13 at 1. In 1990, VU hired Mr. Jones as a police officer of VU's Police Department ("VUPD"). *See* dkt. 47-16. During his

1

interview, VUPD's Chief of Police at the time, Allen Clark, asked Mr. Jones if he would disclose his Japanese ethnicity on his hiring paperwork so that VU "could boost [its] affirmative action statistics." Dkt. 47-2 at 7–9 (Jones Dep. at 29:18–31:7). Mr. Jones marked his ethnic origin as "Asian or Pacific Islander" on the hiring paperwork. Dkt. 47-16 at 2. Someone else wrote and circled "Japanese" at the top of his employment application. Dkt. 47-2 at 7 (Jones Dep. at 29:10-17); dkt. 47-15 at 1.

Mr. Jones testified that during his employment some VU employees said things to him like, "What are you?"; "Are you a gook"; "We hear you're Hawaiian"; "What country are you from?"; and "You're not like [other Asian-Americans]." Dkt. 51-2 at 78, 80, 209, 237 (Jones Dep. at 78:15-16, 80:13-15, 209:14-15, 237:20-21). While it is not clear exactly when these comments were made, it is undisputed that it was before 1991. Dkt. 51-2 at 238 (Jones Dep. at 238:1-3).

In July 2004, Mr. Jones was appointed interim Chief of Police of the VUPD. *Id.* at 25–28 (Jones Dep. at 47:11–48:15). Mr. Jones then applied for the VUPD's permanent Chief of Police opening and was selected for the position, effective October 4, 2004. *Id.* at 27–29 (Jones Dep. at 49:2–51:8).

When Mr. Jones was selected as the new Chief of Police, his immediate supervisor was Lynn White. Dkt. 51-2 at 83 (Jones Dep. 83:21-25). Ms. White supervised Mr. Jones until her retirement in 2016. *Id.* at 84 (Jones Dep. 84:4-6). During the time that he was supervised by Ms. White, Mr. Jones received favorable performance evaluations. Dkt. 51-7 at 1-25. Mr. Jones' overall

2

evaluation scores between 2011 and 2014 were identical, and then slightly dropped in 2015.  *Id.* at 90 (Jones Dep. 90:13-22).

Around June 2016, Phil Rath—VU's Vice President of Financial Services and Government Relations—began overseeing the VUPD and became Mr. Jones's supervisor. Dkt. 47-3 at 10 (Rath Dep. at 13:1-23). Mr. Rath told Mr. Jones what he expected of him as Chief of Police, including that Mr. Jones proactively provide Mr. Rath with regular updates and regularly initiate communications with University Deans. Dkt. 47-3 at 21-28 (Rath Dep. at 24:5-31:10).

Mr. Jones did not regularly proactively communicate with Mr. Rath and there were instances when Mr. Jones was unavailable when Mr. Rath would try to contact him. Dkt.47-3 at 18, 21-24, 31 (Rath Dep. at 21:8-19, 24:5-27:15, 34:14-16). Mr. Jones admits that, after Mr. Rath became his supervisor, he did not have many interactions with him. Dkt. 51-2 at 121 (Jones Dep. at 121:1-3). Furthermore, other University officials complained to Mr. Rath that Mr. Jones was not initiating regular interactions with them and was often inaccessible. Dkt. 47-3 at 26-28, 31-33 (Rath Dep. at 29:6-31:10, 34:14-36:11).

Ultimately, Mr. Rath decided that the VUPD needed a leadership change. Dkt. 47-2 at 85–86 (Jones Dep. at 150:12–151:6). Around June 1, 2017, Mr. Rath told Mr. Jones that VU would eventually replace Mr. Jones as Chief of Police. *Id.* at 59–60, 81, 83–84 (Jones Dep. at 124:25–125:4-5, 146:14-22, 148:23–149:1). During that conversation, Mr. Rath told Mr. Jones that after he

was replaced, he would remain employed by VU as the Assistant Chief of Police. *Id.* at 18 (Jones Dep. at 146:14-22). Mr. Jones recalls Mr. Rath telling him, "You'll be the Assistant Chief . . . You don't have to worry about it. You'll have a job. I guarantee you a job." *Id.* at 81 (146:16-22

On June 9, 2017, Mr. Rath called a meeting with VU officials, including Assistant Chief of Police Robert Dunham and Human Resources Director Regina McCord-Fithian. Dkt. 47-5 at 12–15, 17 (McCord-Fithian Dep. at 25:8–28:8, 30:4-17); dkt. 47-6 at 1; dkt. 47-4 at 16 (Dunham Dep. at 19:2-23). Ms. McCord-Fithian took notes during the meeting, which indicate that Mr. Rath spoke about VUPD's reorganization and his plans to appoint Mr. Dunham as Chief of Police. *See* dkt. 47-19. Her notes read, "Keeping [Mr. Jones] employed on special assignment . . . but do not want to keep [Mr. Jones] in VUPD in any capacity. Concerned he will slow down the new direction the VUPD will be going in." *Id.*

After that meeting, Ms. McCord–Fithian called Mr. Jones and left a voicemail explaining that Mr. Dunham's appointment as Chief of Police would be announced to the VU community that afternoon. *Id.* (Jones Dep. at 162:16-22); dkt. 47-19. Thereafter, Ms. McCord-Fithian sent an email to the VU community announcing Mr. Dunham's appointment. Dkt. 47-18 at 1.

On June 12, 2017, Mr. Rath advised Mr. Jones that he was the Assistant Chief of Police. Dkt. 47-2. at 106 (Jones Dep. at 186:3-15). He also informed Mr. Jones that he could retire earlier than VU had previously indicated and still receive full retirement benefits. *Id.* at 105–106 (Jones Dep. at 185:21–

4

186:4).  Mr. Jones decided to take the remainder of that week to "think about it."  *Id.* at 106 (Jones Dep. at 186:1-17).

A few days later, Mr. Rath called Mr. Jones and shared an idea to transfer him to a new position involving active-shooter trainings.  *Id.* at 111–113 (Jones Dep. at 191:12–193:4).  Mr. Jones expressed interest, but they did not discuss the specifics such as job title, salary, or duties.  *Id.* (Jones Dep at 192:12–14, 21-23).

On June 16, 2017— although Mr. Jones had not accepted the active-shooter training position—Mr. Rath signed a "Change of Status" form that indicated Mr. Jones' job title had changed from Chief of Police to Director of Safety and Training, with an effective date of June 9, 2017.  Dkt. 47-3 at 67–68 (Rath Dep. at 77:4–78:4); dkt. 47-20 at 1.  On Monday, June 19, 2017, Mr. Dunham told Mr. Jones he was on special assignment.  Dkt. 47-2 at 113 (Jones Dep. at 193:5-10).  Upon receipt of this conflicting information, Mr. Jones decided to tender his letter of resignation, effective June 20, 2017.  *Id.* (Jones Dep. at 193:14-19); dkt. 47-22.  Ms. McCord-Fithian then completed a Payroll Notification Form indicating that Mr. Jones had resigned.  Dkt. 47-23 at 1.  That form listed Mr. Jones' title at the time of his resignation as Chief of Police.  *Id.*

Mr. Jones alleges that VU removed him from his position as Chief of Police because of his Japanese race and national origin.  VU has moved for summary judgment, arguing that Mr. Jones has not designated evidence from

which a reasonable juror could conclude that he suffered an adverse employment action because of his race or national origin. Dkt. 47; dkt. 49.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

Title VII prohibits an employer from discharging an employee because of that person's race or national origin, among other grounds. 42 U.S.C. § 2000e-2(a)(1). Summary judgment on a Title VII claim turns on "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The question is whether a reasonable juror could conclude that the plaintiff

6

would have kept his job if he had a different ethnicity or national origin, and everything else had remained the same. *Id.* at 764. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself. *Id.*

### A. Evidence of discriminatory motive[1]

VU argues that Mr. Jones has not shown any evidence of discriminatory motive. *See* dkt. 49. Mr. Jones responds that discrimination can be inferred from personnel documents, dkt. 47-15, dkt 47-1, and evidence that VU employees used racial epithets and made other insulting remarks about his Japanese race and national origin.

Mr. Rath testified that he had never seen the personnel documents that reference Mr. Jones' race and national origin, dkt. 47-15, dkt 47-16; dkt. 47-3 at 19 (Rath Dep. at 22:1-24), and that he did not know that Mr. Jones was Asian-American, dkt. 47-3 at 18 (Rath Dep. at 21:20–25). Mr. Jones does not designate any evidence to the contrary. He argues that Mr. Rath might have looked at his personnel file at some point in time, dkt. 52 at 15-16, but mere speculation does not create a triable issue. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). *See Holmes v. Potter*, 384 F.3d 356, 362 (7th Cir. 2004) ("Usually, an employer's lack of knowledge about a protected category rings a death knell for discrimination claims.").

---

[1] As discussed in greater detail below, Mr. Jones has not shown any evidence of discrimination and cannot establish a prima facie case because he has not identified a similarly situated employee who was not of Japanese origin and treated better. He has also not shown that he was meeting Mr. Rath's legitimate expectations. Accordingly, the Court does not reach the issue of whether Mr. Jones suffered an adverse employment action.

Similarly, there is no designated evidence that Mr. Rath made or was aware of comments about Mr. Jones's race and national origin. These remarks, which Mr. Jones attributed to various other VU employees, were made over 25 years before Mr. Rath decided to remove Mr. Jones from the Chief of Police position. Dkt. 51-2 at 78, 80, 209, 237 (Jones Dep. at 78:15-16, 80:13-15, 209:14-15, 237:20-21). When Mr. Jones was asked whether Mr. Rath had ever made comments about his race or national origin, he testified, "I don't know. I'll just say I don't remember." Dkt. 47-2 at 66 (Jones Dep. at 131:18–25). When Mr. Jones was asked what evidence he had that Mr. Rath removed him as Chief of Police because of his race or national origin, he answered, "I don't have anything right now." Dkt. 47-2 at 152 (Jones Dep. at 243:7–13). There is no evidence that the remarks about Mr. Jones's race and national original played any role in Mr. Rath's decision to remove him from the position of Chief of Police. *See Holmes*, 384 F.3d at 362.

### B. *McDonnell Douglas* burden shifting

To establish a *prima facie* case under the *McDonnell Douglas* burden shifting approach, a plaintiff must show that he (i) belonged to a protected class, (ii) met his employer's legitimate expectations, (iii) suffered an adverse employment action, and (iv) was similarly situated to other employees who were not members of the protected class and who were treated better. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff makes a *prima facie* case, the burden shifts to the defendant to give a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant

8

meets this burden, the burden shifts back to the plaintiff to show that the defendant's explanation was a pretext. *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (noting that the burden ultimately shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual).

### 1. Legitimate expectations

VU argues Mr. Jones has not shown that he was meeting VU's legitimate expectations. In response, Mr. Jones focuses on past performance evaluations that gave him favorable reviews.

VU relies on evidence that Mr. Jones failed to meet the reasonable expectations that Mr. Rath set for him when he became his supervisor; specifically, that Mr. Jones proactively and regularly initiate communications with himself and University Deans. Dkt. 47-3 at 21-28 (Rath Dep. at 24:5-31:10). There is evidence that VU deans complained about Mr. Jones' lack of communication. *Id.* at 27 (Rath Dep. 30:11-14). Moreover, Mr. Rath testified that he removed Mr. Jones as Chief of Police because he believed that Mr. Jones "had a real weakness in communication" and "seemed to be unavailable," dkt. 47-3 at 21 (Rath Dep. at 24:5-8), and "just felt that Bob Dunham would've been a better Chief." *Id.* at 53 (Rath Dep. at 63:20-21). Mr. Jones admits that, after Mr. Rath became his supervisor, he "didn't have that many interactions with him." Dkt. 47-2 at 56 (Jones Dep. 121:1-3).

To show that he met his employer's legitimate expectations, Mr. Jones points to favorable performance evaluations that he received between 2011-

9

2015.  Dkt. 52 at 12-13; dkt. 51-7 at 1-24.  But Lynn White, not Mr. Rath, gave Mr. Jones these favorable performance evaluations.  Evidence that Mr. Jones met Ms. White's expectations prior to July 2016 does not show that he met Mr. Rath's expectations between July 2016 and June 2017.  *Fortier v. Ameritech Mobile Communications*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken."); *Tucker v. Loyola Univ. of Chicago*, 192 F. Supp. 2d. 826, 831 (N.D. Ill. 2002) (noting that old performance reviews do not demonstrate that employee was meeting employer's expectations at the relevant time of separation from employment).

Mr. Jones argues summary judgment is not appropriate, or alternatively that the Court must assume he has established a *prima facie* case, because Mr. Rath applied standards in a discriminatory fashion.  Dkt. 52 at 12.  But as discussed above, Mr. Jones has not designated evidence suggesting that Mr. Rath knew of Mr. Jones's Japanese race or national origin, dkt 47-2 at 152, so there is no evidence to support an inference that Mr. Rath set or applied his standards in a discriminatory manner based on Mr. Jones's race or national origin.

### 2. Similarly situated to other employees

VU argues that Mr. Jones cannot establish a *prima facie* case because he has not identified a comparator.  In response, Mr. Jones contends that former Chief of Police Harold Hensley was "similarly situated" and thus can be used as a comparator.  Dkt. 52 at 14.

The similarly situated inquiry asks, "are there enough common features between the individuals to allow a meaningful comparison"? *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012); see *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009). To be a comparator, the other employee "must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles." *Senske*, 588 F.3d at 510. While the Court must conduct a "flexible, common-sense" examination of all relevant factors, "[i]n the usual case a plaintiff must show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct" without circumstances that distinguish the employer's treatment. *Id.* at 846–47 (citation and quotations omitted). While this is usually a fact question, summary judgment is appropriate when no reasonable factfinder could find that the plaintiffs have met their burden. *Id.* at 846–47.

Mr. Hensley is not a suitable comparator. He was Chief of Police until 2004, dkt. 47-2 at 25 (Jones Dep. at 47:13-14), and supervised by Lynn White, not Mr. Rath. Dkt. 47-2 at 23, 25, 148-150 (Jones Dep. at 45:3-4, 47:11-16; 239:21-241:9). Mr. Jones does not allege that Mr. Rath had a role in employment decisions related to Chief Hensley. *Id.* Mr. Hensley therefore cannot be compared to Mr. Jones. *See Coleman*, 667 F.3d at 848 ("[T]his court generally requires a plaintiff to demonstrate at a minimum that a comparator was treated more favorably by the same decision-maker who fired the plaintiff."). Mr. Jones has not identified a comparator who is similarly situated

enough to allow a jury to infer that VU removed him from the Chief of Police position because of his race or national origin.[2]

Mr. Jones has not shown that he was meeting VU's legitimate expectations or that a similarly situated employee who was not of Japanese origin was treated better, so he cannot establish a *prima facie* case under the *McDonnell Douglas* framework.[3]  No reasonable juror could conclude that Mr. Jones would have kept his job if he had a different ethnicity or national origin, and everything else had remained the same so there is no triable issue. *Coleman*, 667 F.3d at 846-47.

## IV.
## Conclusion

For the reasons explained above, VU's motion for summary judgment is **GRANTED**.  Dkt. [47].  Final judgment will enter by separate order.

**SO ORDERED.**

Date: 10/19/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[2] In his response to VU's motion for summary judgment, Mr. Jones states, "although not explicitly stated, Robert Dunham could also qualify as a similarly situated individual for the sake of this test." Dkt. 52 at 14.  That's the extent of it.  Mr. Jones does not provide any further explanation or designate any evidence to show how Mr. Dunham is "similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision." *Coleman*, 667 F.3d at 841. Mr. Jones has not carried his evidentiary burden on this point, nor has he presented a sufficiently developed argument.  *M.G. Skinner and Assoc. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived . . . .").

[3] The Court "need not concern" itself with burden shifting or pretext, or with the other elements of the prima facie case.  Carson, 865 F.3d at 536; *accord* Fleishman, 698 F.3d at 609.  The same reasoning with regards to Mr. Jones failure to meet Mr. Rath's legitimate expectations also show Mr. Rath's legitimate, nondiscriminatory reason for removing him as Chief of Police. Similarly, the Court does not address VU's other arguments as to why it is entitled to summary judgment.

Distribution:

Brent R. Borg
CHURCH CHURCH HITTLE & ANTRIM (Fishers)
bborg@cchalaw.com

Ronald S Langacker
LANGACKER LAW LTD.
ron@langackerlaw.com

Kevin S. Smith
CHURCH CHURCH HITTLE & ANTRIM (Fishers)
ksmith@cchalaw.com